[No. D005459. Fourth Dist., Div. One. Sept. 16, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE EARL CARR, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1] Pursuant to California Rules of Court, rules 976.1 and 976(b), this opinion is certified for publication with the exception of the first part of the Discussion.

COUNSEL

Gary Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Rudolf Corona, Jr., and Deborah D. Factor, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

WIENER, Acting P. J.—Defendant Dale Earl Carr appeals after a jury found him guilty on one count of first degree burglary. (Pen. Code, §§ 459,

460.)[2] In a bifurcated proceeding, the court also found Carr had served two prior prison terms within the meaning of section 667.5(b) and had suffered one prior serious felony conviction (a 1981 residential burglary) within the meaning of section 667a.

Carr's principal contentions involve alleged misconduct by the prosecutor in his closing argument. Even if the prosecutor's comments bordered on misconduct in one instance, our review of the record convinces us that the arguably improper remarks did not affect the verdict. We also reject Carr's remaining contentions of sentencing error and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Jose Saavedra and Maria Gomez returned to their second story apartment late one afternoon and discovered a Black man inside hurriedly putting tape cassettes into a pillowcase. The man, later identified by both Saavedra and Gomez as the defendant Carr, reached inside his shirt using his finger to simulate a gun. When Saavedra realized Carr had no weapon, he ran to call the police. Carr ran from the apartment carrying two pillowcases. Saavedra pursued Carr and confronted him outside the apartment. Saavedra picked up some rocks and asked Carr to return the things he had taken. Carr dropped the pillowcases and proceeded to walk across the street to where a group of Blacks—mostly male—were gathered.

The police arrived within approximately four minutes. Saavedra pointed out Carr to the police as the man he had found inside the apartment. When the officers approached, Carr fled but was captured a short time later. Gomez was transported to the scene of Carr's arrest and identified him as the burglar.

## DISCUSSION

*Prosecutorial Misconduct* *

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*Prior Serious Felony Enhancement*

The allegations that Carr had suffered a prior serious felony conviction (§ 667(a)) and had served two prior prison terms (§ 667.5) were bifurcated

---

[2] All statutory references are to the Penal Code. For sake of convenience when citing statutory subparts, we omit repetition of the word "subdivision."

* See footnote 1, *ante,* page 774.

from the main action and tried to the court following the jury verdict. The court found all allegations true. In finding that Carr's 1981 second degree burglary conviction was a serious felony, the court referred to Carr's change of plea form in the earlier action in which he admitted to committing "residential" burglary by "entering an inhabited dwelling . . . with the intent to commit theft therein." Less than a month later, the Supreme Court decided *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154] which held that a judgment of conviction established only those facts which were necessary elements of the charged crime. Because entry of a residence is not necessarily an element of second degree burglary, the court held that the prior conviction could not establish the applicability of the section 667(a) serious felony enhancement based on "burglary of a residence." (*Alfaro, supra,* 42 Cal.3d at pp. 634-636.) *Alfaro,* however, was recently overruled in *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150].

■  The People apparently concede that the trial court's finding Carr had suffered a prior serious felony conviction was impermissible under *Alfaro*. The record makes clear, however, that such a finding would be proper under the new standards enunciated in *Guerrero*. Although the information charging the 1981 burglary only refers to entry of "an inhabited *building,*" the change of plea form initialed and signed by Carr explains that he is pleading guilty to a "residential" burglary and admits that he "enter[ed] an inhabited dwelling in the daytime with the intent to commit theft . . . ." We conclude that resort to the change of plea form falls within the *Guerrero* rule which allows the trier of fact to "look to the entire record of the conviction." (44 Cal.3d at p. 355.)

■  The remaining question is whether *Guerrero* applies. Carr argues that *Guerrero* should not be applied retroactively. We disagree. Only two post-*Guerrero* cases raising the issue have been decided. Both applied *Guerrero* retroactively. (*People* v. *Batista* (1988) 201 Cal.App.3d 1288, 1294 [248 Cal.Rptr. 46]; *People* v. *Colbert* (1988) 198 Cal.App.3d 924, 930 [244 Cal.Rptr. 98].) *Batista,* in particular, explains that the purpose of the *Guerrero* rule compels retroactive application. (201 Cal.App.3d at p. 1294.)

Carr responds that principles of due process preclude application of *Guerrero* here because at the time he burglarized Gomez's and Saavedra's apartment, the state of the law was such that he could reasonably believe a serious felony enhancement could not be imposed.[4] (See *Guerrero, supra,* 44

---

[4] It may be that citizens must be presumed to know the law. (See 1 Witkin, Cal. Crimes (1963) § 148, p. 141.) We are, however, uncomfortable with the assumption underlying Carr's argument that prospective criminals rationally calculate and consider the applicable punishment when deciding whether to commit a crime. Here, for instance, we are required to

Cal.3d at p. 356, fn. 1, expressing no view on the due process issue.) We question Carr's premise. Such an argument might have merit had Carr's crime been committed after the Supreme Court's decision in *Alfaro* clarified the issue of what a sentencing court could look to in imposing a serious felony enhancement. Here, however, Carr's burglary was perpetrated more than three months before *Alfaro* was filed at a time when the issue remained unsettled. (Compare *People* v. *Brown* (1985) 169 Cal.App.3d 313 [215 Cal.Rptr. 150] with *People* v. *Longinetti* (1985) 164 Cal.App.3d 704 [210 Cal.Rptr. 729].)[5] Where the law is unsettled, we do not believe a defendant can be said to have reasonably relied on a particular outcome. Accordingly, we affirm imposition of the section 667(a) enhancement.

*Prior Prison Term Enhancement*

While Carr was serving a term of imprisonment on the 1981 burglary conviction which served as the basis for the serious felony enhancement (*ante*), he escaped from the prison facility at Camp Viejas. After his recapture, Carr was convicted of violating section 4532(b) (nonviolent escape) and returned to prison to serve the time remaining on his burglary conviction plus an additional period attributable to the escape. The information in this case alleged the term served on the escape conviction as the basis for a section 667.5 prior-prison-term enhancement.

Section 667.5(g) provides that a defendant serves a single *term* in state prison notwithstanding that the term consists of several separate sentences attributable to different convictions.[6] Carr contends that the period of time he spent in prison attributable to the 1981 burglary conviction and the subsequent escape conviction constitutes a single prison term within the meaning of section 667.5. He asserts that where a single prison term is attributable to several felonies, one of which is used to impose a section 667(a) enhancement, section 654's prohibition against double punishment precludes imposition of a section 667.5 enhancement based on the aggregate term. (See *People* v. *James* (1985) 170 Cal.App.3d 164, 167 [216 Cal.Rptr.

assume that before committing the burglary, Carr calculated that the maximum prison term he would face was eight years because he understood that although he had committed a prior residential burglary, it could not be proved for the purposes of a section 667(a) enhancement. As a matter of reality, the assumption strikes us as bordering on the absurd. As a matter of theory, however, the concept of deterrence which serves as a significant foundation for much of our penal law is largely premised on precisely such an assumption.

[5] *Longinetti* was disapproved by the Supreme Court in *Alfaro, supra,* 42 Cal.3d at page 636, footnote 8.

[6] Section 667.5(g) provides: "A prior separate prison term for the purposes of this section shall mean a continuous completed period of incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, incuding any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."

24]; *People* v. *Hopkins* (1985) 167 Cal.App.3d 110, 117 [212 Cal.Rptr. 888].) Relying on *James* and *Hopkins*, ■■■■ ■ Carr argues that imposition of both a section 667(a) enhancement based on the 1981 burglary and a section 667.5 enhancement based on the escape constitutes double punishment in violation of section 654.[7]

■ ■■ ■ ■ The crux of Carr's argument is that the prison sentence on the 1981 burglary and the consecutive sentence on his later conviction for escape constitute but a single prison term.[8] We considered and rejected a similar contention in *People* v. *Cardenas* (1987) 192 Cal.App.3d 51 [237 Cal.Rptr. 249]. There, the prior which the People sought to use as the basis for a separate section 667.5 enhancement was a violation of section 4502 (possession of a sharp instrument) committed while the defendant was incarcerated. We began by referring to section 667.5(g) which defines a prior separate prison term as "a continuous completed period of prison incarceration . . . ." We then analyzed section 1170.1(c) which applies specifically to felonies committed while the defendant is incarcerated in state prison. It provides in part that "the term of imprisonment for all the convictions which the person is required to serve consecutively shall commence from the time such person would otherwise have been released from prison." We concluded, "Prison commitments commenced after a previous term is 'completed' constitute separate periods of incarceration." (192 Cal.App.3d at p. 59.)

We recently applied a similar analysis to an escape conviction in *People* v. *White* (1988) 202 Cal.App.3d 862 [249 Cal.Rptr. 165], concluding that "the term for an in-prison offense does not become part of the aggregate prison term imposed for those offenses which were committed 'on the outside.'

---

[7] We reject Carr's additional contention that a typographical error in the information which denominated Carr's prior escape conviction as a violation of section 4532(a) rather than 4532(b) requires a striking of the enhancement. The error certainly did not confuse Carr; section 4532(a) applies to escapes by persons convicted of misdemeanors and, although it is a felony, cannot by its terms serve as the basis for a prior felony allegation in a later proceeding. The documents presented to the trial court to support the allegation correctly listed the violation as section 4532(b) and neither Carr nor his counsel ever made reference to the erroneous denomination. Since an information may be amended to conform to proof at any stage of the proceeding so long as the defendant's substantial rights are not compromised (§ 1009; *People* v. *Jones* (1985) 164 Cal.App.3d 1173, 1178-1179 [211 Cal.Rptr. 167]), we see no basis for concluding Carr was prejudiced by the trial court's finding he had served a prior prison term based on his violation of section 4532(b). A contrary holding would encourage defendants and defense counsel to stand mute in the face of the most insignificant clerical errors in hopes of obtaining reversal on appeal.

[8] At first blush, the last clause of section 667.5(g) (*ante,* fn. 6) might seem to support Carr's argument. Read in context, however, it is clear that language is intended to refer only to that portion of the original prison term for which the defendant is *re*imprisoned following the escape. Any new prison sentence imposed on a new escape conviction would not constitute reimprisonment within the meaning of subdivision (g).

Instead the defendant is imprisoned for a total term consisting of the sum of his aggregate sentence computed under section 1170.1(a) plus the new aggregate term imposed under section 1170.1(c)." (*Id.* at p. 870.)

Carr attempts to distinguish *Cardenas* and *White* by pointing to the fact that the Legislature used different language in section 4532(b) in referring to violent and nonviolent escapes. The statute specifically provides as to violent escapes that the consecutive sentence is to "commenc[e] from the time the person would otherwise have been released from imprisonment . . . ." As to nonviolent escapes, section 4532(b) simply provides that the sentence is "to be served consecutively . . . ." Carr's argument as to the significance of this distinction ignores the fact that section 1170.1(c) by its terms applies to both types of escapes. It is on the interpretation of that language—not the language of section 4532(b)—that our decisions in *Cardenas* and *White* were based.

We accordingly conclude the trial court properly imposed a section 667.5 enhancement based on the separate prior prison term served by Carr for his escape conviction.

Disposition

Judgment affirmed.

Benke, J., and Woodworth, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied December 15, 1988.

---

* Assigned by the Chairperson of the Judicial Council.