[No. A023011. First Dist., Div. Three. Feb. 22, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
HULEN TIMOTHY HARRELL, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV and V.

---

**COUNSEL**

Daniel Costello for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan, David D. Salmon, Martin S. Kaye and Blair Hoffman, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**WHITE, P. J.**—Defendant and appellant Hulen Timothy Harrell appeals from the judgment of the Superior Court of Alameda county entered after a jury found him guilty of assault with intent to commit rape. (Pen. Code, § 220.) Appellant, who proceeded in propria persona at trial, contends on appeal that the trial court erred in allowing the prosecution to impeach him with his prior burglary convictions, in improperly instructing the jury, and in failing to issue adequate *"Faretta* warnings," (*Faretta* v. *California* (1976) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525]) that the evidence was insufficient to sustain the verdict, and that enhancements were improperly imposed. We find appellant's contentions to be without merit.

I

*Facts*

Rosario Zavalza testified that she was living at 1332 East 23rd Street in Oakland with her two children. On October 8, 1982, shortly after noon, as she was preparing lunch in the kitchen, she felt someone come up from behind her, loop a belt around her neck and place a hand over her mouth. She asked, "Who is it?" and "What is it that you want?" Appellant answered repeatedly, "You shut up," and "I want to steal," and "I want sex."

Zavalza forced her way into the hallway where appellant knocked her down. He then pushed her up against the wall and started kissing her on the

mouth. She had never seen him before. Appellant was wearing only pants; the zipper was down and his penis was exposed.

Appellant threw Zavalza to the floor, punched her, and attempted to remove her skirt. Throughout the struggle, Zavalza's one and one-half-year-old daughter clung to her side despite appellant's efforts to keep her away.

Suddenly, Zavalza's brother, Otis Graham, who also lived at said residence, arrived, and appellant fled. Graham followed in pursuit.

Police Officer McCune testified that he observed appellant and Graham in a confrontation and drove toward them. The men resumed their chase and McCune followed. He caught them, handcuffed appellant and ordered him into the patrol car.

McCune testified further that appellant was carrying several items including his shoes, belt and boxer shorts in a bundle, and was holding up his pants at the waist and his genitals were in view. The belt was looped through the buckle.

Appellant's version of the facts is that several days prior to the incident in question, he was severely injured in a bicycle accident. Appellant submitted into evidence his hospital records which showed the extent of the injuries, including a fracture and lacerations.

Appellant testified that on the day in question, he met Otis Graham at a store owned by Graham's mother. Graham gave appellant some pills to alleviate his pain. Appellant then asked Graham for permission to lie down at his house and Graham obliged.

Appellant went to Graham's house. He walked into the kitchen where he met Zavalza; appellant claimed he had previously met Zavalza on "at least five or six occasions." He decided to take a shower. After getting undressed, appellant heard Zavalza's daughter screaming. He put on his pants and walked out into the hallway where he saw Zavalza shaking the child "viciously . . . with the belt in her hand." Appellant and Zavalza were struggling over the belt when Graham arrived.

Graham yelled at appellant who then scooped up his clothes and left. Graham came after appellant and slashed him with a sharp instrument which prompted him to run.

Appellant claims that at the time of arrest he was wearing his belt and that Officer McCune ordered him to remove it.

II-V*

· · · · · · · · · · · · · · · · · · · · · · · ·

VI

*Prior Conviction Enhancements*

Appellant received a 16-year sentence. This sentence consisted of a six-year principal term, a five-year prior conviction enhancement under Penal Code section 667 for a 1981 burglary conviction, and another Penal Code section 667 enhancement for four 1975 prior convictions which were tried together. The court found that appellant had been convicted of another burglary in 1980, but ordered that the Penal Code section 667 enhancement for this conviction be stayed.

Appellant contends that the enhancement for the 1981 burglary conviction must be stricken. We rejected this contention the first time we considered it. (*People* v. *Harrell* (Mar. 26, 1986) A023011 [nonpub. opn.].) The Supreme Court then granted review and transferred the case to us in light of *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154], overruled in *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150]. Our subsequent opinion found that *Alfaro* barred the imposition of the enhancement and we directed the trial court to strike the enhancements for the 1980 and 1981 convictions. (*People* v. *Harrell, supra,* A023011.) The Supreme Court again granted review, and it has now transferred the case to this court for "reconsideration in light of *People* v. *Guerrero* (1988) 44 Cal.3d 343." We conclude that imposition of the enhancement for the 1981 conviction is proper under *Guerrero*.

*Alfaro* held that the sentencing court could not look beyond the elements necessarily established by the prior conviction to determine if it involved a burglary of a residence. Thus, unless burglary of a residence was an essential element of the prior burglary conviction, the court could not consider the pleadings and court records in determining whether the burglary was residential. (*Alfaro, supra,* 42 Cal.3d at pp. 631-635.) In 1981, the crime of second degree burglary could be committed by entering a residence or a nonresidential structure. (*People* v. *Jackson* (1985) 37 Cal.3d 826, 830, fn. 2 [210 Cal.Rptr. 623, 694 P.2d 736], overruled in *People* v. *Guerrero, supra,* 44 Cal.3d 343.)

---

*See footnote, *ante*, page 1439.

In *Guerrero,* the court concluded that it had wrongly decided *Alfaro.* (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 356.) The court announced that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." (*Id.,* at p. 345.) The court did say that while the trier of fact could look at the "entire record of the conviction," it could not relitigate the circumstances of the prior crime. (*Id.,* at p. 355.)

The facts and result in *Guerrero* compel the conclusion that the trial court in this case did not err in imposing a section 667 enhancement for the 1981 burglary conviction. In *Guerrero,* the trial court imposed an enhancement based on "an accusatory pleading charging a residential burglary and defendant's plea of guilty or nolo contendere, . . ." (*Guerrero, supra,* 44 Cal.3d at p. 345.) The Supreme Court found that the trial court had "acted properly" in imposing the enhancement. (*Id.,* at p. 356.) The Supreme Court remanded to the Court of Appeal "for further proceedings consistent with this opinion," (*ibid.*) thereby implying that the appellate court could affirm the judgment without remanding to the trial court for additional evidence of the residential character of the burglary.

In the present case, the information alleged that appellant was convicted of a residential second degree burglary on July 17, 1981. Over appellant's objection, the court permitted the prosecutor to introduce as evidence the information for the prior conviction. It alleged that appellant had entered "the residence of Stephen Lewis . . . ." A minute order relating to the prior conviction, also admitted in evidence, stated that appellant had pled no contest to "Burglary, a violation of Section 459 of the Penal Code as charged in the Information."

The evidence on which the trial court in this case relied was identical to the type of evidence on which the trial court in *Guerrero* had relied. The Supreme Court in *Guerrero* concluded the trial court had "acted properly." We therefore find, under *Guerrero,* that the trial court in this case did not err in imposing a five-year enhancement under Penal Code section 667 for the 1981 burglary conviction.

■ In our view *Guerrero* clearly disposes of this issue; nevertheless appellant contends that a 1987 amendment to Penal Code section 1192.7, subdivision (c)(18) renders the evidence submitted in the trial court insufficient to sustain the court's finding that the 1981 second degree burglary is a serious felony. At the time appellant stood trial, subdivision (c)(18) provided that a "burglary of a residence" was a "serious felony" within the meaning of Penal Code section 667. However, effective January 1, 1987, this language was deleted and subdivision (c)(18) was amended to make

"burglary of an inhabited dwelling house . . . or inhabited portion of any other building" a serious felony. (Stats. 1986, ch. 489, § 1.) Appellant contends that burglary of "a residence" is not equivalent to burglary of "an inhabited dwelling house." In appellant's view, the use of the word "inhabited" in the amended statute indicates the Legislature intended to punish as serious felonies only those burglaries in which persons are actually inside the dwelling when the crime occurs. According to appellant this contrasts with the former version of the subdivision which permitted the conclusion that burglary of a building used as a residence (but not occupied at the time of the crime) constituted a serious felony. Appellant's argument is unpersuasive. ■ In our view, the terms "residence" and "inhabited dwelling house" are equivalent.

The 1987 amendment to subdivision (c)(18) made it consistent with the current definition of first degree burglary.[5] ■ ■ In our view, the change was one of clarification—to bring the language in line with the current definition of first degree burglary—not a substantive change. A residence is the same as an "inhabited dwelling house." The amendment did not narrow the definition of burglary as a serious felony.

As used in the burglary statutes, an "inhabited dwelling house" is a dwelling which is "currently being used for dwelling purposes, whether occupied or not." (Pen. Code, § 459.) This is precisely the meaning the courts have given to the term "residence." In *People v. Deay* (1987) 194 Cal.App.3d 280 [239 Cal.Rptr. 406], the trial court found the defendant guilty of "residential burglary." In finding that this was sufficient to sustain a conviction for first degree "burglary of an inhabited dwelling house," the Court of Appeal stated: "We see no practical difference between burglary of an inhabited dwelling and residential burglary. With the elimination on January 1, 1983, of the requirement that a first degree burglary be committed in the nighttime, all burglaries *of residences* are first degree pursuant to section 460. [Citation.] Further, courts have consistently analyzed first degree burglary in terms of whether the dwelling was being used as a *residence*. [Citations.] Even the common understanding of residence, which connotes a place of abode of some permanency [citation], cannot be differentiated from an inhabited dwelling unit for purposes of first degree burglary." (*Id.* at p. 284, italics added.)

Similarly, in *People v. Valdez* (1962) 203 Cal.App.2d 559, 563 [21 Cal.Rptr. 764], a vacant (unrented) rental unit was burglarized. The court

---

[5] Penal Code section 460, subdivision 1 defines first degree burglary as "[e]very burglary of an inhabited dwelling house or trailer coach as defined by the Vehicle Code, or the inhabited portion of any other building . . . ."

held that this was second degree burglary because "the dwelling house in [that case], at the time in question, was not the *residence* of a person temporarily absent. It was not the *residence* of the new tenant, of the landlord, or of the old tenant. It was not the *dwelling* house of either of them." (*Ibid.*, italics added.)

Thus, it can be seen that the courts have interpreted "residence" to mean an "inhabited dwelling" as that term is defined in the Penal Code; that is, a building which is currently being used for dwelling purposes, whether occupied or not. (Pen. Code, § 459.) Consequently, the 1987 amendment to section 1192.7, subdivision (c)(18) did not narrow the scope of the serious felony.

The legislative history of the amendment also shows that "residence" and "inhabited dwelling" were meant to be equivalent. As originally drafted, the bill which amended subdivision (c)(18) (Assem. Bill No. 3733) defined the serious felony as a "burglary *of a residence* or inhabited dwelling . . . house . . . ." There was concern that using both definitions implied there was a difference between a "residence" and a "dwelling house." Thus the Assembly Committee on Public Safety's analysis of Assembly Bill No. 3733 recommended that "to conform to the Penal Code, the term burglary 'of a residence' should be stricken. ██ ██ ██ 6.) To retain the reference to residence implies that a residence is somehow different from a dwelling house." (Assem. Com. On Pub. Safety, Report on Assem. Bill No. 3733, p. 3.)[6] The final version of Assembly Bill No. 3733 deleted the reference to burglary "of a residence," thereby implying the Legislature believed this term had no independent significance. (Stats. 1986, ch. 489, § 1.)

██ In sum, past judicial construction of the term "residence" and the legislative history of the amendment, show that "residence" and "inhabited dwelling house" are equivalent terms.

As to the enhancement for the 1980 prior burglary conviction, there is no question that the court had the power to strike the enhancement under Penal Code section 1385. (*People v. Fritz* (1985) 40 Cal.3d 227 [219 Cal.Rptr. 460, 707 P.2d 833].) ██ On May 6, 1986, the Legislature

---

[6] An analysis of a bill prepared for a legislative committee is apparently relevant to show legislative intent. (See *Curtis v. County of Los Angeles* (1985) 172 Cal.App.3d 1243, 1250 [218 Cal.Rptr. 772].)

enacted legislation contrary to *Fritz* (Pen. Code, §§ 667, subd. (a); 1385, subd. (b)); however, this legislation may not constitutionally be applied to crimes committed before its effective date. (*People v. Williams* (1987) 196 Cal.App.3d 1157, 1159-1161 [242 Cal.Rptr. 421]; *People v. Hoze* (1987) 195 Cal.App.3d 949, 956 [241 Cal.Rptr. 14].)

■ However, there is a question whether the court had the power to stay the enhancement. Some courts have stated in dictum that a court has the power to "strike or stay" a Penal Code section 667 enhancement. (*People v. Hoze, supra,* 195 Cal.App.3d at p. 956; *People v. Whigam* (1984) 158 Cal.App.3d 1161, 1169 [205 Cal.Rptr. 227], overruled on other grounds in *People v. Guerrero, supra,* 44 Cal.3d 343.) In *People v. Eberhardt* (1986) 186 Cal.App.3d 1112 [231 Cal.Rptr. 387], this view was persuasively criticized. The court pointed out that those cases which state that a section 667 enhancement can be stayed do so without citation to authority and overlook the distinction between " 'striking' " and " 'staying.' " (*Id.,* at pp. 1122-1123.) The court therefore held that the trial court had imposed an unauthorized sentence by suspending imposition of sentence on the enhancements. (*Id.,* at p. 1124.) This holding finds further support in the language of Penal Code section 1385 which provides that a judge may, in the interests of justice, "order an action to be dismissed," and the mandatory language of section 667 that the defendant "shall receive . . . a five-year enhancement for each such prior conviction on charges brought and tried separately."

The trial court in this case did not specify whether it was staying the imposition of the enhancement or the execution of the sentence for the enhancement. It appears that the court intended to stay the imposition of the enhancement in declaring: "[T]his enhancement as to the second prior conviction is stayed, and it will be dismissed at such time as all of the time served that I'm about to pronounce, and have pronounced has been served."

It appears that in this case the court may have stricken the enhancement had it known it could not stay the enhancement. Nevertheless, we believe the trial court (and not this court) should make that determination. Consequently, we remand the case to the trial court to allow it to exercise its discretion in determining whether to strike the enhancement.

## VII

### *Disposition*

The case is remanded to the trial court so that it may exercise its discretion in determining whether to strike the enhancement for the 1980 burglary conviction. In all other respects, the judgment is affirmed.

Barry-Deal, J., and Merrill, J., concurred.

A petition for a rehearing was denied March 23, 1989, and appellant's petitions for review by the Supreme Court were denied May 18, 1989.