Filed 9/3/13  P. v. Francisco CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B242703 |
| Plaintiff and Respondent, | (Los Angeles County |
| v. | Super. Ct. No. SA080090) |
| TITUS ADRIAN FRANCISCO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. James R. Dabney, Judge.  Affirmed as modified.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Eric E. Reynolds and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Titus Francisco of one count of second degree commercial burglary in violation of Penal Code section 459.[1]  In a bifurcated proceeding, the trial court found 11 prior prison term allegations to be true but subsequently struck one of the allegations on the court's own motion.  The trial court sentenced defendant to a total term of 12 years in state prison.  The sentence consisted of the midterm of two years in count 1, plus one year each for the 10 prior prison term enhancements.

Defendant appeals on the ground that the evidence was insufficient to support certain of the trial court's findings on the prior prison term allegations, resulting in a violation of his right to due process.

## FACTS

**Prosecution Evidence**

On February 17, 2012, Ismael Parra was working at the El Segundo Best Buy store.  Parra observed a man, later identified as defendant, kneeling in front of a display case.  Defendant appeared to be trying to pry open a laptop box.  Para noticed that the box was missing its extra security device called a "spider wrap" that is supposed to prevent the box from being opened.  Parra approached defendant and asked if he needed help.  Defendant appeared startled and muttered something before walking away with the laptop box.  Parra contacted loss prevention services and asked them to keep an eye on defendant and the laptop.

Stephanie Hammond, the store manager, was alerted to the situation.  She went to the loss prevention desk to view a monitor showing defendant walking around the store with a white box.  Hammond saw defendant approach the cash register.  She saw him place the laptop box "underneath the register" at a point where the cashier could not see it.  Defendant purchased a drum skin from the musical instruments section while keeping the laptop box out of sight.  When the transaction was complete, Hammond approached defendant and asked him if he was going to pay for the laptop.  Defendant said, "'This is

---

[1]      All further references to statutes are to the Penal Code unless stated otherwise.

mine. I was returning it.'" When Hammond asked if defendant had obtained a pink sticker that is placed on all returns by customer service, defendant then said "no" and that he had just purchased it. Hammond said she needed to see a receipt or she would have to review videotape of defendant coming in with the laptop.[2] Defendant kept saying, "'I'll just go get my receipt'" and began leaving the store. Defendant left the laptop box. An associate later found a spider wrap in the computer section. Another associate followed defendant through the parking lot and saw defendant enter a car driven by a female. Based on the description of the car and the occupants, the police later pulled over the car in which defendant was riding. The retail value of the laptop was approximately $900.

**Defense Evidence**

Defendant presented no evidence in his defense.

## DISCUSSION

### I. Defendant's Argument

Defendant argues that a report from the California Law Enforcement Telecommunications System (CLETS), standing alone, is not evidence that is reasonable, credible, and of solid value such that a rational trier of fact could find that he suffered a prior conviction within the meaning of section 667.5, subdivision (b). He maintains that the trial court's reliance on this evidence violated his due process right to acquittal except upon proof beyond a reasonable doubt of the truth of the allegations against him.

### II. Relevant Authority

At the time of defendant's sentencing hearing (July 2012), section 667.5, subdivision (b) provided in pertinent part as follows: "Except where subdivision (a) [pertaining to a 'violent' new offense] applies, where the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of Section 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate

---

[2] Hammond's subsequent review of the videotape showed defendant entering the store with nothing in his hands.

prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended for any felony; provided that no additional term shall be imposed under this subdivision for any prison term or county jail term imposed under subdivision (h) of Section 1170 or when sentence is not suspended prior to a period of five years in which the defendant remained free of both the commission of an offense which results in a felony conviction, and prison custody or the imposition of a term of jail custody imposed under subdivision (h) of Section 1170 or any felony sentence that is not suspended. . . .”  Due process requires proof of each of these elements in order to impose the enhancement.  (*People v. Tenner* (1993) 6 Cal.4th 559, 563, 566.)

“The prosecution has the burden of proving beyond a reasonable doubt each element of the section 667.5, subdivision (b) sentence enhancement, including the fact of no five-year ‘washout’ period.  [Citation.]  When, as here, a defendant challenges on appeal the sufficiency of the evidence to sustain the trial court’s finding that the prosecution has proven all elements of the enhancement, we must determine whether substantial evidence supports that finding.  The test on appeal is simply whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving the enhancement beyond a reasonable doubt.  In that regard, in conformity with the traditional rule governing appellate review, we must review the record in the light most favorable to the trial court’s finding(s).”  (*People v. Fielder* (2004) 114 Cal.App.4th 1221, 1232.)

Although “the state has the burden of proving that a defendant suffered a prior conviction within the meaning of section 667.5, the usual rules of evidence are applicable to assist the prosecution in presenting a prima facie case.  Thus, a court is allowed to make reasonable inferences from the facts presented.”  (*People v. Elmore* (1990) 225 Cal.App.3d 953, 959; see also *People v. Delgado* (2008) 43 Cal.4th 1059, 1066.)

At the time of defendant’s sentencing hearing, section 969b provided:  “For the purpose of establishing prima facie evidence of the fact that a person being tried for a crime or public offense under the laws of this State has been convicted of an act punishable by imprisonment in a state prison, county jail or city jail of this State, and has

4

served a term therefor in any penal institution, or has been convicted of an act in any other state, which would be punishable as a crime in this State, and has served a term therefor in any state penitentiary, reformatory, county jail or city jail, or has been convicted of an act declared to be a crime by any act or law of the United States, and has served a term therefor in any penal institution, the records or copies of records of any state penitentiary, reformatory, county jail, city jail, or federal penitentiary in which such person has been imprisoned, when such records or copies thereof have been certified by the official custodian of such records, may be introduced as such evidence."

The official records exception to the hearsay rule, embodied in Evidence Code section 1280, provides: "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered in any civil or criminal proceeding to prove the act, condition, or event if all of the following applies: [¶] (a) The writing was made by and within the scope of duty of a public employee. [¶] (b) The writing was made at or near the time of the act, condition, or event. [¶] (c) The sources of information and method and time of preparation were such as to indicate its trustworthiness." (See *People v. Martinez* (2000) 22 Cal.4th 106, 119-120 (*Martinez*).) "A trial court has broad discretion in determining whether a party has established these foundational requirements. [Citation.]" (*Id.* at p. 120.) A reviewing court may overturn the trial court's exercise of discretion "'"only upon a clear showing of abuse."'" [Citations.]" (*Ibid.*)

## III. Proceedings Below

Angela Hubbard, a paralegal with the district attorney's office, testified regarding five section 969b (969b) packets from the California Department of Corrections (CDC) produced in the first of defendant's hearings on the prior prison term allegations. The prosecutor introduced each packet as a separate exhibit, labeled Nos. 1 through 5. Hubbard identified the abstracts of judgment, photographs, and other documents in each exhibit, which attested to defendant's commitments to state prison in Case Nos. YA071871, TA099214; FWV09420 and F0132350; LA029699, BA144361; BA144361; and A962646 and A804342. Hubbard also identified a 19-page CLETS rap sheet

5

(People's Exh. No. 6) that she had "run" prior to coming to court by entering the CII number[3] into the CLETS system.

Over defense objection, the trial court found that Evidence Code sections 1280 and 1530[4] were satisfied by the certified copies of the CDC records in the 969b packets. The court found true the allegations of prior prison term commitments reflected in the 969b packets.

The trial court noted that there were no 969b packets for six of the prior prison term allegations, and the prosecutor acknowledged she was relying on the CLETS printout to prove these. Defense counsel questioned the reliability of the printout. Counsel requested an opportunity to research its validity because she had received no notice it would be used. The trial court allowed counsel time to prepare an argument on the issue of whether the CLETS rap sheet was admissible under Evidence Code sections 1280 and 1530.

At the subsequent hearing, counsel argued that the prosecutor's repeated requests to the CDC had produced only the 969b packets the court had reviewed; therefore the People should not be allowed to fill in the gap with the CLETS printout. The court reviewed the CLETS printout and found that the prison commitments it had found true based on the 969b packets were accurately reflected in the CLETS printout. The court stated, "So it appears to me from looking at the CLETS printout they accurately reflected every single one of the convictions that we had in the 969b packets, which leads me to believe that all the entries were in fact correctly entered in the official records as required.

---

**3** A CII number is a California Identification Index number. (*Martinez*, *supra*, 22 Cal.4th at p. 121.)

**4** Evidence Code section 1530 provides in pertinent part that a "purported copy of a writing in the custody of a public entity, or of an entry in such a writing, is prima facie evidence of the existence and content of such writing or entry" if, with respect to writings kept by entities within the United States, the copy purports to be published by the authority of the nation or state and the copy is certified as a correct copy by a public employee having legal custody of the writing.

6

And pursuant to the cases cited in the People's motion, I will be receiving People's 6 into evidence." Defense counsel again protested that the CDC was asked to produce all the documents for every time defendant was in prison, and some of the commitments in the CLETS were not in the documents the CDC produced. The trial court replied, "The fact that . . . the People failed to procure the 969b packets for postconvictions is not enough for me to doubt the accuracy of the CLETS printout showing those convictions. So I am finding all those priors to be true. . . ."

## IV.  CLETS Report Properly Admitted; Evidence Sufficient

As the parties acknowledge, the leading case on the admissibility and use of CLETS printouts is *Martinez, supra*, 22 Cal.4th 106. Although defendant frames his argument as one of sufficiency of the evidence, the gist of his complaint is that the CLETS report was the sole document used to prove the prior conviction allegations at issue. He points out that in *Martinez* the prosecution also presented superior court files, a prison packet, abstracts of judgment, and testimony from a deputy sheriff to prove the prior conviction allegations. Defendant appears to argue that the CLETS report lacks foundation because of the lack of additional evidence. Thus, defendant is essentially challenging the trustworthiness, or the third prong of the official records exception to the hearsay rule, and, hence, the report's admissibility. As explained *infra*, we agree with *Martinez* that the CLETS report was not lacking in trustworthiness, and we conclude the evidence in this case was sufficient.

In *Martinez*, as in the instant case, a paralegal from the district attorney's office testified regarding several documents, including a CLETS printout he had generated on the day of his testimony. (*Martinez, supra*, 22 Cal.4th at pp. 112-113, 120.) The *Martinez* court summarized the paralegal's testimony about the contents of the CLETS printout, the sources of the information it contained and the fact that personnel authorized to use CLETS obtain criminal history information by entering into the computer a CII number, as did paralegal Hubbard in the instant case. (*Id*. at p. 121.) The *Martinez* defendant argued that the trial court erred in admitting the CLETS document under the official records exception to the hearsay rule (Evid. Code, § 1280) as evidence of prior

7

convictions and prior prison terms. (*Martinez*, at p. 113.) The Supreme Court stated that section 969b ""''is permissive and not mandatory"''' and ""''does not restrict the People from using other forms of proof . . ." to establish the fact of previous imprisonment. [Citation.]' [Citation.]" (*Id*. at pp. 116-117.) In sum, no statute required the prosecution to provide a 969b packet to prove the fact of a prior prison term. (*Id*. at p. 117.)

Next, the court found that *People v. Guerrero* (1988) 44 Cal.3d 343, cited by defendant in the instant case, which limited the scope of proof of prior conviction allegations to the record of conviction, applied only to the circumstances of the crime and not to other aspects of the prior conviction such as identity of the defendant or service of a prior prison term. (*Martinez*, *supra*, 22 Cal.4th at pp. 117-118.)

The *Martinez* court summarized a number of statutes of which the trial court could have taken judicial notice and that have imposed obligations on California law enforcement agencies regarding the compilation and reporting of criminal history information. (*Martinez*, *supra*, 22 Cal.4th at pp. 121-125.) These statutory reporting duties were significant because Evidence Code section 664 sets forth a presumption that official duty has been regularly performed. (*Martinez*, at p. 125.) Because of these statutory duties to carefully report and record criminal history information, CLETS records came within the Evidence Code section 664 presumption. (*Martinez*, at pp. 125-126.) *Martinez* went on to hold that the CLETS printout satisfied all three requirements of the official records exception to the hearsay rule, Evidence Code section 1280, in that the writings were made by and within the scope of duty of a public employee (*Martinez*, at pp. 119, 125-126), the writings were made at or near the time of the act or event (*id*. at pp. 126-127), and the information was trustworthy (*id*. at pp. 128-131).

As noted, defendant attempts to distinguish *Martinez* on the grounds that the CLETS report in that case was used in addition to other evidence. *Martinez* clearly stated, however, that the prosecution was not required to produce 969b packets, which is where abstracts of judgment and chronological logs are typically found. (*Martinez*, *supra*, 22 Cal.4th at pp. 116-117.) And, although it is true that the Supreme Court mentioned the deputy sheriff's testimony as further evidence that supported the

8

trustworthiness of the CLETS printout, the court by no means indicated that such testimony was required. The court noted this testimony in a short paragraph at the end of a lengthy discussion of the reasons the CLETS printout was trustworthy. (*Id.* at pp. 128-131.) Moreover, nothing in the official records exception requires foundational testimony from a custodian or the preparer of the record.

We also note that the official duty presumption merely shifts the burden of proof to the opposing party, who may rebut the presumption. (*Martinez*, *supra*, 22 Cal.4th at p. 125.) Defendant did not contest that he suffered these prison terms and offered no evidence to the contrary, despite being given extra time to prepare for the second hearing on the allegations. "'[O]fficial government records clearly describing a prior conviction presumptively establish that the conviction in fact occurred, assuming those records meet the threshold requirements of admissibility. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].) Some evidence must rebut this presumption before the authenticity, accuracy, or sufficiency of the prior conviction records can be called into question.' [Citation.] [¶] Thus, if the prosecutor presents, by such records, prima facie evidence of a prior conviction that satisfies the elements of the recidivist enhancement at issue, and if there is no contrary evidence, the fact finder, utilizing the official duty presumption, may determine that a qualifying conviction occurred. [Citations.]" (*People v. Delgado*, *supra*, 43 Cal.4th at p. 1066.) Defendant made no attempt to rebut the properly admitted evidence in this case.[5]

We do not agree with defendant's argument that the analysis of Assembly Bill No. 1387, which enacted the Criminal Convictions Record Act (CCRA) indicates that CLETS

---

[5] This is not surprising given that when counsel disputed the sufficiency of the evidence of the prior prison terms shown by the 969b packets, the following exchange took place:

"THE COURT: Okay. Why are they not sufficient?
"MS. DEETZ [Defense Counsel]: Because they're not.
"THE COURT: Is that it?
"MS. DEETZ: Yeah.
"THE COURT: Thank you."

was meant to serve as no more than an aid to acquiring proper records of conviction. As stated in *Martinez* with respect to the CCRA, "the Legislature did not question the accuracy or trustworthiness of existing information sources, such as CLETS." (*Martinez*, *supra*, 22 Cal.4th at p. 119.) In fact, one legislative analysis explained that "'prosecutors receive preliminary criminal history information through [the Department's] Criminal Identification and Information System,' which 'provides *timely accurate* posting of criminal history data.'" (*Ibid*.) *Martinez* stated that, by establishing through the CCRA a simplified process for proving facts regarding a defendant's criminal history, the Legislature did not intend to exclude other methods of proof such as admission of CLETS records. (*Ibid*.)

In the instant case, therefore, the trial court did not abuse its discretion in finding the CLETS report trustworthy, nor did it err in finding the CLETS printout was sufficient evidence to support true findings on the allegations for which no prison packet had been produced. The trial court noted that the 969b packets the prosecutor had produced verified the information in the CLETS printout for the same convictions. Accordingly, since we conclude that the evidence in the CLETS report was admissible and sufficient to prove the prior prison term allegations at issue, we reject defendant's claim that two more of his enhancements fail because, had he prevailed, they would fall within the "washout" period.

Finally, our examination of the CLETS report reveals that the prior prison terms found by the trial court are all contained in the report, which was certified by Hubbard as a true and original document received from the CLETS system by the district attorney's office. The trial court did, however, use the prison term from case No. LA029699 twice in making its list of 10 prior prison terms. [6] This was clearly an inadvertence and thus constitutes clerical error. "'Generally, a clerical error is one inadvertently made, while a

---

[6] We also observe that defendant challenges the true finding for case No. A985633, although the trial court did not make a true finding for this allegation and did not include it in its final list.

10

judicial error is one made advertently in the exercise of judgment or discretion. [Citations.]'" (*People v. McGee* (1991) 232 Cal.App.3d 620, 624.)  Courts may correct clerical errors at any time, including appellate courts that have properly assumed jurisdiction of a case.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  Defendant's sentence must be reduced by one year to correspond with the number of separate prior prison term allegations found true by the trial court.

### DISPOSITION

The judgment is modified to strike one of defendant's one-year enhancements under section 667.5, subdivision (b).  In all other respects, the judgment is affirmed.  The superior court is directed to amend the abstract of judgment and forward a corrected copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11