Filed 1/28/14  P. v. Jones CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>STEVEN JONES,<br><br>Defendant and Appellant. | C071889<br><br>(Super. Ct. No. 09F01893) |

During a prison disturbance, defendant Steven Jones punched a correctional officer in the face.  An information charged defendant with battery on a nonconfined person by a prison inmate and possession of a sharp instrument by an inmate.  (Pen. Code, §§ 4501.5, 4502, subd. (a).)[1]  A jury found defendant guilty on both counts and the court sentenced him to two consecutive 25-years-to-life terms.  On appeal, defendant argues the trial court's decision to shackle him at trial was made in the absence of

---

[1]  All further statutory references are to the Penal Code unless otherwise designated.

manifest necessity, and the court committed instructional error and sentencing error. We shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008 a prison fight broke out. Prison officers responded, and as an officer attempted to handcuff defendant, defendant punched another officer in the face and continued to strike the officer as he lay on the ground. After he was subdued, officers found a sharpened metal object in defendant's shoe.

An information charged defendant with battery on a nonconfined person by a prison inmate and possession of a sharp instrument by an inmate. The information also alleged defendant had suffered two prior strike convictions within the meaning of sections 667, subdivisions (b)-(i) and 1170.12.

A jury trial followed. The following evidence was introduced at trial.

One afternoon in September 2008 an alarm sounded, alerting prison officers that two inmates were fighting in the prison yard. Following prison procedures, the tower officers ordered all inmates in the yard to get down into a prone position. Four inmates failed to comply and crouched down, fists clenched as if they were going to charge toward responding officers.

Several officers approached the crouching inmates and ordered them down; they refused. A short distance from the inmates, the officers formed a "skirmish line," ordering defendant, the closest inmate, to stand up, turn around, and back toward the officer to be handcuffed.

Defendant took a few steps as ordered, then turned around and faced an officer. When the officer ordered him to turn back around, defendant refused. Several other officers ordered defendant to turn back around; defendant turned halfway around. Defendant clenched his fists.

2

As an officer reached out to handcuff defendant, defendant punched another officer in the face. The officer fell backward, hitting his head on the concrete. Defendant straddled the officer and struck him several more times. The officer lost consciousness.

An officer struck defendant with his baton; another officer pushed defendant off the supine officer. Officers subdued defendant and placed him in restraints.

Officers took defendant on a gurney to the prison's medical treatment center. En route, defendant asked an officer, " 'What happened to your partner I hit?' " Defendant continued: " 'I should not have . . . came out of my cell this drunk. That Pruno tasted so damn good, though.' " "Pruno" refers to inmate-produced alcohol made from fermented fruit and other ingredients.

Defendant stated the officer got hit " 'because he did not warn me. He was in my way. [¶] . . . [¶] . . . He is always going to remember that right I hit him with. [¶] . . . [¶] . . . I know I fucked him up, but he needs to get off that gurney.' " The injured officer had also been transported via gurney to the medical treatment center. Defendant also said: " 'I am a mean person when I am mad and he found that out.' "

When an officer at the medical treatment center collected defendant's clothing for evidence, he also removed defendant's shoes. As the officer pulled off the left shoe, defendant said: " 'Be careful, I have something in there.' " Inside the left shoe, the officer found a metal object sharpened to a point at one end, with a taped handle. Inmates are not allowed to possess such items because they present a danger to both inmates and correctional officers.

The defense presented no evidence. The jury found defendant guilty on both counts and found him sane as to both counts. The court found the prior strike allegations true and sentenced defendant to two consecutive terms of 25 years to life. Defendant filed a timely notice of appeal.

## DISCUSSION

## Restraint During Trial

Defendant argues there was no showing of manifest necessity requiring his restraint at trial. Therefore, the court erred in ordering his restraint in violation of his rights to due process and a fair trial.

**Background**

Prior to trial, the court held a hearing stemming from concerns expressed by prison officials. The officials requested defendant be restrained by handcuffs as well as waist and leg chains. At the hearing, an officer testified defendant was serving 19 years for assault with a deadly weapon. Officers considered defendant a high-risk inmate for purposes of transporting him off prison grounds. The possibility of an additional term stemming from the current charges increased the risk. Defendant was a maximum security inmate. A placement score of 52 or higher receives a maximum security classification; defendant received a score of 281.

In 1992 defendant escaped from the California Youth Authority. While in prison, defendant participated in a riot and committed two counts of battery on an inmate, two counts of possession of a weapon, two counts of mutual combat, assault on an inmate with a weapon, and battery on a peace officer. An officer testified that defendant presented a significant threat to the security of the court and that the policies of the Department of Corrections and Rehabilitation required full restraints at all times on high-risk inmates when transported off prison grounds. The officer did allow that defendant's hands could remain free as long as his waist chains remained fastened to the chair.

The court stated the waist chains and ankle restraints could be covered and not visible to the jury. However, defense counsel objected to the restraints even if they were not visible.

The court noted restraints should not be imposed absent a showing of manifest need. Manifest need may be based on evidence of a defendant's nonconforming conduct

4

while in custody, such as evidence of escape from custody, threats or assaults against custodial officers or other inmates while in custody, and/or possession of weapons in jail. The court found that defendant engaged in these behaviors and ordered a nonvisible waist chain and ankle restraints, but ordered defendant's hands be unencumbered.

**Discussion**

Defendant disputes the trial court's finding of manifest need in imposing restraints. He argues, "it appears that the trial court simply deferred to the Department of Correction[s] officer's expressed fear that [defendant] might somehow act out. There was no particular evidence that [defendant] had an intention to harm anyone in the courtroom, escape, or disrupt the proceedings. There was no evidence that [defendant] had assaulted, or threatened any attorney, judge, or other court personnel in the past. In fact, it appears that [defendant] had acted entirely appropriately during his trial on competency."

A defendant may be subjected to physical restraints while in the jury's presence upon a showing of manifest need. Manifest need may be found when the evidence reveals the defendant has threatened jail deputies, possessed weapons while in custody, threatened or assaulted other inmates, and/or engaged in violent outbursts in court. (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1031 (*Lewis and Oliver*).) The court's decision to impose restraints must be based on facts in the record. (*People v. Lomax* (2010) 49 Cal.4th 530, 561.) Moreover, the court must make its own determination and not simply defer to the opinions of officers. (*Ibid.*) We uphold the trial court's decision absent a manifest abuse of discretion. (*Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1032.)

Physical restraints should be as unobtrusive as possible, but as effective as necessary under the circumstances. Any error in imposing restraints is harmless if there is no evidence the jury was aware of the shackles during trial or that the restraints

5

impaired the defendant's ability to participate in the defense. (*People v. Mar* (2002) 28 Cal.4th 1201, 1217; *People v. Anderson* (2001) 25 Cal.4th 543, 596.)

Here, the court considered the factors set forth in *Lewis and Oliver* and determined defendant met the criteria for a manifest necessity for restraint. The current charges centered on defendant's assault of a correctional officer and possessing a weapon while in custody. Defendant had also participated in a riot, committed battery on a fellow inmate, possessed a weapon, and committed battery on a peace officer. In addition, defendant had previously escaped from the California Youth Authority.

The trial court was not "simply deferring" to correctional officers. The court heard testimony from officers detailing defendant's past actions that justified a finding of manifest necessity. The court considered the evidence under *Lewis and Oliver* and found it sufficient. In addition, the court ordered the least obtrusive restraints possible, which could not be seen by the jury and which left defendant's hands free. There was no abuse of discretion.

## Prior Conviction as a Strike

Defendant contends his prior conviction under section 245, subdivision (a)(1) does not qualify as a serious felony under the "three strikes" law because it does not necessarily involve the use of a weapon. According to defendant, the trial court erroneously applied the rule of *People v. Guerrero* (1988) 44 Cal.3d 343 (*Guerrero*), which allows the trial court to consider the entire record of conviction when trying a prior conviction allegation to enhance a defendant's sentence.

**Background**

The information alleged defendant had suffered two prior serious or violent felony convictions within the meaning of the three strikes law: a 2004 conviction for assault with a semiautomatic firearm and a 1998 conviction for assault with a deadly weapon. (§§ 245, subds. (b), (a)(1).) Defendant argued the record did not establish the 1998 conviction was a strike. In order to be a strike, the assault with a deadly weapon had to

involve a weapon, and it was possible to violate the statute with an assault by means of force likely to produce great bodily injury rather than with a deadly weapon. The court found both strike allegations true. The court based its finding on People's exhibit Nos. 8, 9, and 10: the complaint, pretrial memorandum, transcript of the plea proceeding, and the abstract of judgment.

**Discussion**

Defendant argues his 1998 conviction for assault with a deadly weapon does not qualify as a strike because it did not necessarily involve the use of a weapon. He contends the trial court erred in following *Guerrero*, *supra*, 44 Cal.3d 343 and considering the entire record of conviction in evaluating the prior conviction special allegation. Specifically, defendant cites more recent United States Supreme Court cases—*Jones v. United States* (1999) 526 U.S. 227 [143 L.Ed.2d 311] (*Jones*); *Apprendi v. New Jersey* (2000) 530 U. S. 466 [147 L.Ed.2d 435] (*Apprendi*); *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403] (*Blakely*); and *Shepard v. United States* (2005) 544 U.S. 13 [161 L.Ed.2d 205] (*Shepard*)—which require courts to ignore *Guerrero* and apply *People v. Alfaro* (1986) 42 Cal.3d 627. *Alfaro* holds that evidence which can be used to prove a prior conviction allegation is limited to the judgment and matters necessarily adjudicated therein. (*Alfaro*, *supra*, 42 Cal.3d at pp. 634-636.) *Guerrero* held that "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction." (*Guerrero*, *supra*, 44 Cal.3d at p. 345.)

Here, the trial court determined defendant's 1998 conviction involved the use of a deadly weapon based on the charge in the complaint, the court's pretrial memorandum, and the transcript of the proceedings in which defendant entered a plea of no contest. In the complaint, the charge states the assault was committed with a deadly weapon, "to wit, prison made weapon." The alternative method of violating section 245,

7

subdivision (a)(1) was stricken from the complaint. The court's pretrial memorandum indicates the punishment for the crime would be four years and it would be a "strike."

The transcript of defendant's 1998 plea of no contest to the assault with a deadly weapon charge reveals that the charge originally included a weapon use enhancement, which was stricken as part of the plea bargain. Defendant stated he understood the nature of the crime was assault with a prison-made weapon and that he personally used such a weapon. Defendant's plea was based on his attack on another inmate at the youth correctional facility. Defendant struck the victim several times. A six-inch "shank" was found nearby, and the victim suffered numerous puncture wounds. At the 1998 hearing, the court advised defendant that the offense he was pleading to was a "strike," meaning that the punishment for any future felony conviction would be doubled and he would have to serve at least 80 percent of the time imposed.

Here, the trial court sentenced defendant in compliance with *Guerrero,* referring to the record of the 1998 conviction. We are not persuaded by defendant's efforts to cast doubt on *Guerrero*.

Defendant argues the federal double jeopardy clause precludes the prosecution "from adding facts to those necessarily adjudicated within a prior conviction when those additional facts are legally essential to the defendant's sentence." However, defendant concedes the United States Supreme Court rejected this contention in *Monge v. California* (1998) 524 U.S. 721 [141 L.Ed.2d 615] and *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350].

In addition, defendant contends "in the absence of a special verdict reflecting a judge's or jury's findings on additional facts, or in the absence of a defendant's admission to additional facts as part of a guilty plea, *a conviction is limited to the necessarily adjudicated elements of the offense of conviction*." To permit consideration of additional facts that are not necessarily reflected in the plea or guilty verdict would run afoul of *Blakely* and *Apprendi*. However, the trial court considered the record, which

8

revealed defendant had waived his right to a jury trial; admitted the charge, which included a weapon allegation; and acknowledged it would be a strike. The trial court did not rely on any additional facts.

Moreover, numerous courts have reaffirmed *Guerrero* since the holdings in *Jones*, *Apprendi*, *Blakely*, and *Shepard*, cases which defendant claims cast doubt upon *Guerrero.* (See *People v. Trujillo* (2006) 40 Cal.4th 165, 176-177; *People v. McGee* (2006) 38 Cal.4th 682, 691-692; *People v. Woodell* (1998) 17 Cal.4th 448, 459; *People v. Maestas* (2006) 143 Cal.App.4th 247, 251.) In *People v. Gonzales* (2005) 131 Cal.App.4th 767, the appellate court explicitly rejected an argument based on *Shepard*. In *Gonzales* the defendant, citing *Shepard*, argued the trial court improperly relied on the preliminary hearing transcript to determine whether he personally used a firearm in the commission of the offense, which would render the prior conviction a serious felony. After distinguishing *Shepard*, the appellate court found the trial court did not violate the principles set forth in *Shepard* by admitting evidence of the preliminary hearing transcript as part of the record of conviction of defendant's prior serious felony. (*Gonzales*, at pp. 772-775.) Defendant neither cites nor discusses *Gonzales*.

Finally, defendant argues "The issue of whether a prior conviction for . . . assault with a deadly weapon/by means likely to inflict great bodily injury, constitutes a 'strike' offense, goes far beyond the bare fact of the conviction based upon the facts necessarily found by a jury or admitted by the defendant. Rather, they all require finding[s] of *additional* potentially disputed facts, which respondent contends is permissible under *Guerrero*, but which is not permissible under the *Apprendi* line of cases." Again, the record reveals the trial court relied on the complaint and the transcript of the plea proceedings in the 1998 conviction, not on any additional potentially disputed facts. We find no error.

9

## Instructional Error

Defendant was charged with possession of a sharp instrument in violation of section 4502, subdivision (a). Defendant contends the trial court erred in denying his request to modify CALCRIM No. 2745 to allow the jury to consider that a sharp instrument could be used in a harmless manner.

**Background**

The trial court instructed the jury as to the charge of possession of a sharp instrument: "The defendant is charged in Count 2 with possessing a weapon, specifically a sharp instrument, while in a penal institution in violation of Penal Code section 4502.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant was present at or confined in a penal institution;

"2. The defendant possessed, or had under his custody or control a sharp instrument;

"3. The defendant knew that he possessed or had under his custody or control the sharp instrument;

"AND

"4. The defendant knew that the object was a sharp instrument that could be used as a stabbing weapon. [¶] . . . [¶]

"A sharp instrument includes an instrument that is sharp, and that can be used to inflict injury and that is not necessary for the inmate to have in his possession.

"The People do not have to prove that the defendant used or intended to use the object as a weapon. [¶] . . . [¶]" (CALCRIM No. 2745.)

During jury instruction discussions defense counsel requested that the court add to CALCRIM No. 2745 the phrase, "[Y]ou may consider evidence that the object could be used in a harmless way in deciding if the object is . . . a sharp instrument." The court found the proposed modification unhelpful. The court noted anything could be used in a harmless way.

10

Defense counsel argued that the requested modification went "to the defendant knowing that the object was a sharp object that could be used as a stabbing weapon." The prosecution countered that the knowledge that the object could be used as a stabbing weapon was not an element of the offense.

The court found whether or not an object could be used in a harmless manner was irrelevant. The court concluded: "It could have a dual purpose. So the fact that you could create or come up with some benign use or some common use doesn't defeat its criminality." The court declined to give the proposed modified instruction.

**Discussion**

Defendant argues the proposed modification was appropriate and the court erred in denying his request. According to defendant, the proposed modification was necessary to save section 4502 from unconstitutional vagueness as applied to the facts of this case. Section 4502, subdivision (a) provides, in part: "Every person who, while at or confined in any penal institution, . . . possesses or carries upon his or her person or has under his or her custody or control any . . . dirk or dagger or sharp instrument . . . is guilty of a felony and shall be punished by imprisonment in the state prison . . . ."

The trial court must instruct on general principles of law closely connected to the facts and necessary for the jury's understanding of the case. (*People v. Avila* (2006) 38 Cal.4th 491, 567.) In addition, defendant is entitled to instructions that pinpoint the defense theory, if requested, when supported by substantial evidence. (*People v. Crew* (2003) 31 Cal.4th 822, 835-836.)

Here, no substantial evidence supports defendant's requested instruction. At trial, an officer testified that as he attempted to remove defendant's shoes at the medical treatment center, defendant said, " 'Be careful, I have something in there.' " Inside defendant's shoe, the officer found a metal object sharpened to a point on one end with a handle made of tape at the other end. Nothing in the evidence at trial supports any inference that the confiscated sharp object was "used to make holes in wall art and

11

decorations, in order to allow them to be hung on a cell wall, which would have amounted to a harmless purpose" as defendant suggests.

Moreover, in *People v. Custodio* (1999) 73 Cal.App.4th 807, this court found the "sharp instrument" provision of section 4502 is not unconstitutionally vague. We rejected the argument that "sharp instrument" was unconstitutionally vague because it could apply to pencils as well as to the etching tool the defendant was charged with possessing. A person of ordinary intelligence would understand that the statute would not apply to a pencil, which is ordinarily used for a legitimate purpose, unless the inmate uses the pencil as a weapon. (*Custodio*, at pp. 812-813.) We find no instructional error.

### Resentencing Under Proposition 36

Defendant contends he is entitled to be sentenced under the ameliorative provisions of Proposition 36. Defendant was sentenced as a "three striker" on August 9, 2012. He argues the changes in the three strikes law enacted after his sentencing should apply retroactively and require his resentencing.

## Background

On November 6, 2012, the voters passed Proposition 36, which enacted the Three Strikes Reform Act of 2012 (Act), effective November 7, 2012. The Act amended sections 667 and 1170.12 to lessen the sentences that may be imposed in cases involving nonviolent, nonserious felonies committed after two prior strikes. (Ballot Pamp., Gen. Elec. (Nov. 7, 2012) text of Prop. 36, §§ 2, 4, pp. 105-109 (Pamphlet).) In addition, the Act added section 1170.126, providing a distinct resentencing option "to persons presently serving an indeterminate term of imprisonment pursuant to" the three strikes law. (§ 1170.126, subd. (a); see Pamphlet, *supra*,, § 6, pp. 109-110.) Section 1170.126 gives the trial court discretion not to resentence a person who "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) Under amended sections 667 and 1170.12, the court enjoys no such discretion. (§§ 667, subd. (e), 1170.12, subd. (c).)

12

**Discussion**

Defendant argues sections 667, subdivision (e)(2) and 1170.12, subdivision (c)(2) apply to him because his third-strike sentence is not yet final on appeal and require remanding his case to the trial court for resentencing. Central to his argument is the case of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). In *Estrada* the Supreme Court held that "where the amendatory statute mitigates punishment and there is no saving clause, . . . the amendment will operate retroactively so that the lighter punishment is imposed" in all cases in which the judgment was not yet final when the amendment took effect. (*Id*. at p. 748.)

Section 1170.12 does not have an express saving clause. But even in the absence of an express saving clause, the rule in *Estrada* does not apply if the Legislature by other language "clearly signals its intent to make the amendment prospective." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.) " '[W]hat is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citation.]" (*Ibid*.)

Statutes enacted into law through the initiative process are construed in the same manner, and are subject to the same principles as, statutes enacted by the Legislature. (*People v. Elliot* (2005) 37 Cal.4th 453, 478.) One of the most important principles is that statutes dealing with the same subject matter—commonly referred to as statutes "in pari materia"—should be construed together. (*People v. Honig* (1996) 48 Cal.App.4th 289, 327.) Application of this rule is especially appropriate in cases where statutes relating to the same subject matter were passed at the same time. (*Stickel v. Harris* (1987) 196 Cal.App.3d 575, 590.) Section 1170.126, a related statute added by Proposition 36, defeats the presumption of retroactivity set forth in *Estrada*. It authorizes limited application to prisoners serving three strikes sentences when the measure was enacted and establishes a specific procedure for defendant to follow in this case.

13

In particular, section 1170.126 provides for the resentencing of "persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) A person serving a three strikes sentence for a current conviction that is not a serious or violent felony "may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with" Proposition 36. (§ 1170.126, subd. (b).) An inmate is eligible for resentencing unless he has prior convictions for certain specified offenses. (§ 1170.126, subd. (e).) If the prisoner is eligible, then the trial court will resentence the defendant "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) The factors governing the exercise of the trial court's discretion—the prisoner's criminal history, record in prison, and any other relevant evidence—are set forth in section 1170.126, subdivision (g).

In light of this scheme, which provides for limited application of Proposition 36 to prisoners serving three-strikes sentences at the time of its enactment, the presumption in *Estrada* does not apply as to them; it applies only to those people not yet convicted or not yet sentenced. Those already sentenced and serving an indeterminate term of imprisonment must petition the trial court for a recall of sentence regardless of whether or not their judgment is final. Nothing in Penal Code section 1170.126 states that its reference to "persons presently serving an indeterminate term of imprisonment . . . whose sentence under this act would not have been an indeterminate life sentence" is meant to apply only to those serving a term of imprisonment under a final judgment. (Pen. Code, § 1170.126, subd. (a).) We may not insert such words into the statute. (Code Civ. Proc., § 1858; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826-827.)

14

Our conclusion that sections 667, subdivision (e)(2) and 1170.12, subdivision (c)(2) do not apply retroactively is supported by *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*). *Yearwood* buttressed its conclusion by referencing the voters' intent in approving the Act and by ballot arguments. According to *Yearwood*, enhancing public safety was a key purpose of the Act. A prospective-only application of the Act supports the Act's public safety purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the Act. If the Act were given retroactive application, prisoners in defendant's position would be entitled to automatic resentencing without any judicial review to ensure they do not currently pose an unreasonable risk of danger to public safety. The time period between sentencing and finality of judgment can span years, and prisoners can increase in dangerousness during this interval. Such a "loophole," the court reasoned, would be inconsistent with the public safety purpose of the Act. (*Yearwood*, at p. 176.)

*Yearwood* also rejected the argument that failing to apply the mandatory ameliorative benefits of Proposition 36 retroactively would violate the equal protection clause of the federal Constitution, noting that the rational relationship test is the appropriate test, and concluding: "Prospective application of amended sections 667 and 1170.12 furthers legitimate interests and does not unfairly discriminate against appellant. A prisoner who was sentenced to an indeterminate life term before the Act's effective date may file a section 1170.126 petition upon finality of the judgment. If qualified, the prisoner will ordinarily receive the same sentencing reduction that would have been obtained if he or she had been resentenced under amended sections 667 and 1170.12. The discretionary public safety exception to second strike sentencing that is present in section 1170.126, but not in amended sections 667 and 1170.12, is rationally related to a legitimate state interest. It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger

15

to the public." (*Yearwood*, *supra*, 213 Cal.App.4th at pp. 178-179.) We agree with *Yearwood* and for that reason reject defendant's argument to the same effect.

## DISPOSITION

The judgment is affirmed.



      RAYE      , P. J.


We concur:


      NICHOLSON      , J.


      ROBIE      , J.