Filed 4/10/15  P. v. Soto CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B250369 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA085316) |
| v. | |
| ANTONIO SOTO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stanley Blumenfeld, Judge.  Affirmed in part, reversed in part and remanded with instructions.

Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Antonio Soto appeals from the judgment entered following his conviction by jury of robbery, attempted robbery, commercial burglary, and possession of a firearm as a felon, with special allegations regarding use of a gun and prior felony convictions. Soto was sentenced to a total term of 100 years to life and was ordered to pay various fines and fees. Soto contends his trial counsel rendered ineffective assistance by failing to investigate the viability of a voluntary intoxication defense and that the trial court erred in denying his motion for a new trial on that basis. He also claims there was insufficient evidence to support the findings on his prior convictions and that the court gave an erroneous jury instruction regarding the burden of proof. We reverse the verdict with respect to one of Soto's prior convictions and remand to the trial court for further proceedings on that issue. We further order the abstract of judgment to be modified to reflect an additional $120 in court security fees and $90 in criminal conviction assessments. In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

### A. Procedural Background

An information filed June 20, 2012 charged Soto with the following seven counts: two counts of second degree commercial burglary (Pen. Code, § 459; counts 1 and 3),[1] one count of attempted second degree robbery (§ 211; count 2), two counts of second degree robbery (§ 211; counts 5 and 6), and two counts of possession of a firearm by a felon (§ 12021, subd. (a)(1); counts 7 and 8).[2] The information further contained special allegations as to counts one and three that Soto personally used a firearm (§ 12022.5, subd. (a)), and as to counts two, five, and six that he personally used a firearm in the commission or attempted commission of a robbery (§ 12022.53, subd. (b)). It was further

---

[1] All further statutory references herein are to the Penal Code unless otherwise indicated.

[2] The information does not allege a Count 4.

alleged that Soto had incurred five prior serious or violent felony convictions as to counts two, five and six (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), and four prior serious felony convictions as to counts two and six (§ 667, subd. (a)(1).)

Soto pleaded not guilty and denied the special allegations. The court bifurcated the trial on counts seven and eight and related prior conviction allegations. On April 2, 2013, following the first phase of the trial, the jury found Soto not guilty on counts three and five. The jury found Soto guilty on counts one, two, and six and further found the firearm enhancements true. Following the second phase of the trial, the jury found Soto guilty on counts seven and eight and found the prior conviction allegations to be true. The trial court also found the five prior convictions were strikes.

On April 3, 2013, following the verdicts but prior to sentencing, the court granted Soto's motion to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806. Soto, in pro. per., filed a motion for a new trial on June 13, 2013, which the court denied.

The court sentenced Soto to a total term of 100 years to life. On count two, the court imposed a term of 25 years to life pursuant to the Three Strikes Law (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), plus an additional 10 years for the firearm enhancement (§ 12022.53, subd. (b)), and three five-year terms for the serious felony prior convictions (§ 667, subd. (a)(1).) The court imposed the same punishment on count six, to be served consecutively to the sentence for count two. The court imposed but stayed punishment on the remaining counts and enhancements. The trial court further ordered Soto to pay two $40 court security fees (§ 1465.8, subd. (a)(1)), two $30 criminal conviction assessments (Gov. Code, § 70373), a $2,000 restitution fine (§ 1202.4, subd. (b)), and imposed and stayed a $2,000 parole revocation fine (§ 1202.45). Soto was awarded 603 days of presentence custody credit. Soto timely appealed.

3

*B. Prosecution Case*

*1. The 99 Cent Store (Counts 1 and 2)*[3]

On October 23, 2011, at about 4:20 p.m., Soto entered a National Best Discount store (also referred to as a "99 Cents" store) located in San Gabriel, California. He approached the cashier, Chui Kwan, said he was looking for buttons for his jeans, and asked her to get them for him. Ms. Kwan retrieved the buttons and then returned to the cash register. Soto came up to the register and pulled a gun out of a bag. Ms. Kwan testified at trial that the gun appeared to be real. Soto pointed the gun at her, tapped the cash register with his hand, and asked Ms. Kwan to open it and place all the money into his bag. Before Ms. Kwan could open the register, Soto reached over, opened it, and raked his hand through the drawer. He then said "I asked you to open up the cash register. Why didn't you do it?" A customer, Maria Rosa Carrillo, approached the counter, but then ran out the back door. Soto then left the store and Ms. Kwan called the police.

Ms. Carrillo, the customer, testified that she saw Soto bending over the counter with a gun in his hand. The gun appeared to her to be real. She heard Soto ask Ms. Kwan to open the cash register several times. Ms. Carrillo then exited the store through a rear door and called the police.

On December 20, 2011, Ms. Carrillo identified Soto from a photographic lineup. Ms. Kwan and Ms. Carrillo both identified Soto at trial. Two video clips from the store's security cameras were played for the jury during the trial, depicting the events of the crime.

*2. Mission Car Wash/Chevron Gas Station (Count 6)*

On November 13, 2011, Yader Hernandez was working as a cashier at the Mission Carwash/Chevron Gas Station in San Gabriel, California. Around 10:30 p.m., as Hernandez was getting ready to close, Soto entered and approached him. Soto pulled a

---

[3]    We omit facts related to counts three and five, the alleged robbery of a Route 66 gas station, as Soto was found not guilty of those charges.

gun out of a bag, pointed it at Hernandez, and said "Give me the money." Hernandez testified he believed it was a real gun. He put an envelope containing cash and receipts into Soto's bag. Hernandez was then able to open the door, run away and call the police. Hernandez identified Soto at trial. A video from the security cameras at the gas station was played for the jury.

### 3. Soto's Arrest and Statement

San Gabriel Police Detective Allen Sam reviewed the 99 Cents store surveillance footage, identified Soto as a suspect, executed a search warrant on the residence of Soto's mother, then arrested Soto. Detective Sam advised Soto of his *Miranda*[4] rights, interviewed him, and showed him portions of the surveillance videos. The interview was recorded and the videotape was played at trial. When asked why he committed the crimes, Soto responded that he got into the "bad habit" of doing methamphetamine, then "got hooked" and "had no other option to support my habit." He said he "went ahead and did" the crime (the robbery of the car wash/gas station) but "regretted it the next day" and "should have known better." Regarding the 99 Cents store robbery, Soto stated he "ran out of money" and wanted to get high, and "the only option I had is to go in there and try to get some money. That was my main thing, to uh, you know, to get high." He claimed that he used a toy gun that "looked real." He used the same gun for the car wash. Soto stated that he "ran out of dope" and "ran out of money," so he walked to the gas station, saw the attendant, and said "let me get that money, and I took out the toy gun. And the guy got scared and he gave it to me." He used the money to buy more drugs.

### 4. Trial on Prior Convictions and Counts 7 and 8

During the search of Soto's mother's home, Detective Sam recovered a Notice of Release form reflecting Soto's release on parole on May 10, 2010. Soto also stated during his interview that he was released in 2010.

---

[4]    *Miranda v. Arizona* (1966) 384 U.S. 436.

Julie Wong, a paralegal with the Los Angeles County District Attorney's Office, testified regarding the "prison packet" supporting Soto's prior convictions. Wong stated that the prison packet contained Soto's name, California Department of Corrections number—a number unique to each inmate—a prison admittance date of January 11, 1995, and discharge date of August 11, 2010. We discuss the details of the prison packet further in Section B *post*.

## DISCUSSION

*A. Ineffective Assistance of Counsel and Denial of Motion for New Trial*

Soto contends the trial court erred in denying his motion for a new trial based on ineffective assistance of counsel. Specifically, he claims his trial counsel failed to investigate the viability of a voluntary intoxication defense. We conclude Soto has not established that his counsel was ineffective, and therefore find no error by the trial court.

*1. Factual Background*

In July 2012, prior to trial, Soto's trial counsel obtained an order appointing an expert for a psychological evaluation. Dr. Timothy Collister evaluated Soto on June 10 and September 19, 2012. Dr. Collister noted that Soto began using marijuana and PCP almost daily when he was 15 years old and then began using methamphetamine and heroin regularly while incarcerated. Soto's alcohol and substance abuse then became "much more substantial, perhaps to the point of dependency" after his last release from prison in 2010, with Soto using methamphetamine and snorting cocaine on a daily basis until his arrest in the current case. Dr. Collister's diagnoses included polysubstance abuse, post traumatic stress disorder—related to the murder of his brother and a friend—and "underlying mild but significant depression." He recommended treatment for Soto's substance abuse, as well as psychotherapy and psychotropic medication with antidepressants.

In his motion for a new trial filed June 13, 2013, Soto asserted, among other grounds, that his trial counsel failed to investigate a voluntary intoxication or diminished capacity defense, and failed to consult with an expert on the viability of those defenses.

6

He filed another motion on June 21, 2013, asking to continue the hearing "to determine the need for an expert" and "to offer evidence regarding the use of meth." At the hearing the same day, Soto requested a 30-day continuance to "get an expert to come in and explain the effect of meth and the reactions and the . . . ." The court responded that "one of the things that you're going to want to address to the court in that regard is whatever the effects of methamphetamine might be, you were interviewed by Detective Sam. And in that interview you seemed to make it very clear that you had a specific intent in engaging in these criminal acts." The court noted that Soto had made some "very damning admissions" in his interview. The court then granted the continuance but cautioned Soto that "this will be it," as he was "getting a little bit concerned about the slow pace of these post-conviction proceedings." The court told Soto that he would have to make a "very strong showing" for any further continuances.

At the continued hearing on July 18, 2013, Soto requested a further continuance and an order appointing a new expert regarding his drug use and how that might have impacted his ability to form the specific intent for the charged crimes. The court denied the request, noting that "there is no reason" the request could not have been submitted "long ago," and that it would not make a difference as to the determination of the new trial motion. The court then denied Soto's motion for a new trial, finding Soto had failed to show his counsel's performance was deficient. The court noted that Soto's trial counsel "did a full workup concerning the issues of mental competence and mental state," including obtaining a "fairly fulsome report" by Dr. Collister. The court found that Soto's counsel made the "tactical decision" not to raise the voluntary intoxication defense. Further, the court concluded that Soto could not show prejudice, as his interview with Detective Sam established that he "made deliberative decisions to commit these robberies for the specific purposes of supporting your habit." Given those admissions, the court found there was no reasonable likelihood or probability that a jury would have looked at the voluntary intoxication defense and concluded that Soto did not form the specific intent to commit these crimes. The court further noted that the evidence

7

in this case was "overwhelming," pointing to the videos that "clearly captured" Soto "in the act of the robbery and attempted robbery" and to Soto's confessions.

### 2. Legal Principles

We review the court's order denying the motion for a new trial de novo. (*People v. Ault* (2004) 33 Cal.4th 1250, 1262.) However, we accept the trial court's credibility determinations and factual findings if supported by substantial evidence. (*People v. Collins* (2010) 49 Cal.4th 175, 242; *People v. Nesler* (1997) 16 Cal.4th 561, 582.)

"A criminal defendant's federal and state constitutional rights to counsel (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15) include the right to effective legal assistance. When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. It is particularly difficult to prevail on an appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

### 3. Soto's Trial Counsel Was Not Ineffective

Soto argues that there "was sufficient evidence of voluntary intoxication in the record to alert trial counsel that such a defense should be explored and developed to negate the specific intent element of robbery and burglary." He points to his statements

8

during his interview that he was so high on drugs during the offenses that he was unable "'to think of things until afterwards'" and to Dr. Collister's conclusion that he was using drugs on a daily basis and suffered from "mental disorders." Although Soto acknowledges Dr. Collister's report, he claims it did not go far enough, as it "was not a full workup concerning [Soto's] mental state during the offenses" and did not assess whether Soto's drug use and mental illnesses "affected his ability to form a specific intent to commit these crimes." Soto suggests that his counsel "settled" on a defense that the gun he used was not real[5] without first conducting a proper investigation into "any psychiatric or mental state factors." We conclude that Soto's counsel's decision not to continue to investigate or present a voluntary intoxication defense did not render him ineffective.

Here, the record reveals that Soto's counsel conducted an investigation of the mental health and substance abuse issues that might have affected Soto's ability to form the specific intent to commit the charged crimes. Soto's trial counsel retained an expert who examined Soto extensively over two sessions and provided an 11-page report detailing his findings. While Dr. Collister did not discuss the potential impact of Soto's substance abuse on his ability to form the intent to commit the crimes charged, it was not unreasonable for Soto's counsel to decide that further investigation into this area was unnecessary given Soto's statements during his interview. Specifically, Soto's admissions to Detective Sam that he went to both businesses in order to "try to get some money" to buy more drugs and that he used a toy gun that "looked real," provided strong evidence that Soto formed the specific intent to commit the crimes. Soto's statements that he could not remember certain details of the crimes because he was "high" do not undercut his repeated professions of his intent.

---

[5]     In closing argument, defense counsel acknowledged that Soto was "forthright" in discussing why he committed the crime—"he needed meth." Counsel then argued that the firearm enhancements could not be established because Soto used a toy gun.

Further, Soto's cited case, *Jennings v. Woodford* (9th Cir. 2002) 290 F.3d 1006, is inapposite. In that capital case in which defendant was charged with robbery felony murder and special circumstances, the defendant's original counsel engaged an expert psychiatrist to conduct a "preliminary" two-hour interview with defendant. (*Id.* at p. 1013.) When defendant obtained new counsel, that attorney did not speak with the psychiatrist, did not request copies of defendant's "voluminous" medical records, and did not make any further attempts to investigate defendant's mental state, possible history of child abuse and involuntary commitment, or the possible effects of drug use on defendant even though he was, a "heavy, long-time user," who reported to the police that he had been "'strung out on goddamn crank for over a year. That's why I was having such a hard time remembering what the hell I was doing and where.'" (*Id.* at pp. 1013-1014.) Accordingly, the court concluded that the attorney was "obliged to thoroughly investigate [defendant's] case in order to *determine* whether a mental state defense might have been better than the alibi defense he had 'settled on' early." (*Id.* at p. 1015.) Here, by contrast, Soto's counsel had sufficient evidence from which he reasonably could have concluded that further investigation into a voluntary intoxication defense would not serve his client's best interests.

Further, there is nothing in the record to suggest that Soto's counsel did not have a rational, tactical purpose for deciding to focus on the argument that the gun used by Soto was not real, rather than pursuing a voluntary intoxication defense. In fact, the trial court noted it had "little doubt" based on the circumstances of the case, that defendant's counsel "considered these issues" and discussed them with Soto, and thereafter made the tactical decision not to raise the voluntary intoxication defense. There is certainly no indication in the record that Soto's counsel was asked to provide an explanation for his decision and failed to do so. In light of the foregoing considerations, we cannot say that Soto's counsel's decision not to pursue or call an expert regarding voluntary intoxication falls outside the "wide range of reasonable professional assistance." (*In re Valdez* (2010) 49 Cal.4th 715, 729-730 [quoting *Strickland v. Washington* (1984) 466 U.S. 668, 689].)

10

In addition, Soto cannot show that he suffered prejudice as a result of his counsel's failure to pursue a voluntary intoxication defense. As noted by the trial court, the "overwhelming" evidence of Soto's guilt included his own confession and repeated statements of intent to commit the crimes in order to "get money" and "get high," surveillance video showing Soto committing the crimes, and testimony by multiple eyewitnesses. Under the circumstances, Soto cannot demonstrate that further investigation into a voluntary intoxication defense would have resulted in a more favorable outcome at trial. We therefore affirm the trial court's denial of Soto's motion for a new trial.[6]

### B. Insufficient Evidence of Prior Convictions

Soto contends there was insufficient evidence to support the jury's finding that he suffered five prior convictions and his corresponding sentencing enhancements should therefore be reversed. We affirm in part and reverse and remand in part.

### 1. Factual Background

The information alleged Soto suffered the following five prior strike convictions (encompassed in three cases):

> 1. section 245, subdivision (a)(2) (assault with a firearm), in case number GA013692 on April 14, 1993;
>
> 2. section 211(robbery) in case number BA099601 on April 4, 1994;
>
> 3. section 215 (carjacking) in case number BA099601 on April 4, 1994;
>
> 4. section 215 (carjacking) in case number GA017493 on March 1, 1994;

and

> 5. section 215 (carjacking) in case number GA017493 on March 1, 1994

At the beginning of the bifurcated trial on the prior conviction allegations and counts seven and eight (which alleged that Soto was a felon in possession of a firearm

---

[6]     Because we agree with the trial court's conclusion that Soto's motion for a new trial, based on his ineffective assistance claims, lacked merit, we also reject Soto's claim that the trial court erred in denying his request for an additional continuance and for appointment of an expert regarding the use of methamphetamine.

11

and were premised on the same prior felony convictions), the prosecutor moved to amend the information to reflect December 28, 1994 as the correct date of the two prior convictions alleged in case number BA099601. Soto did not object and the court granted the motion.

As discussed above, the prosecution presented Soto's CDC prison packet at trial as evidence establishing his prior convictions. The first page of the packet was a cover letter with the name "Jose Soto," the CDC number J46547, and a discharge date of August 11, 2010.[7] The second through fourth pages of the packet contained a certified chronological history from January 1995 to August 2010, containing the same name and CDC number.

The following three pages were the abstracts of judgment for Soto's prior convictions:

The abstract for case number GA013692 lists the defendant as "Jose Soto, aka Jose Escobar," with the handwritten CDC number J46547, and shows a conviction on one count pursuant to section 245, subdivision (a)(1) (noted as "asslt w/ firearm"),[8] with an enhancement for use of a firearm (§ 12022.5, subd. (a)), on April 14, 1993.)

The abstract for case number GA017493 lists the defendant as "Jose Soto, aka Jose Escobar" and includes a handwritten CDC number.[9] The abstract shows convictions on two counts of carjacking (§ 215, subd. (a)), with a firearm enhancement as to one count (§ 12022.5, subd. (a)), on March 1, 1994.

The abstract for case number BA099601 lists the defendant as "Jose Escobar, aka Antonio Soto." It does not contain a legible CDC number. The abstract shows

---

[7]     The Notice of Release discovered in Soto's mother's house also contained the same name and CDC number.

[8]     As discussed below, the abstract contains an inconsistency regarding whether Soto was convicted under section 245, subdivision (a)(1) (assault with a deadly weapon other than a firearm) or subdivision (a)(2) (assault with a firearm).

[9]     The CDC number is partially cut off at the top, but appears to be the same number.

12

convictions on one count of robbery (§ 211) and one count of carjacking (§ 215, subd. (a)), with a firearm enhancement as to each count (§ 12022.5, subd. (a)), on December 28, 1994.

The following two pages of the packet contained Soto's fingerprint card dated January 11, 1995, listing the name "Jose Soto," the alias "Jose Escobar," the same CDC number, and the case numbers GA017493, GA013692, and BA099601. The final page contained a photograph of a person with the listed name "J. Soto" and CDC number J46547.

The jury found all five of the prior convictions alleged to be true. With respect to case number GA013692, it found as "true" that Soto suffered a prior conviction for "assault with a firearm in violation of Penal Code Section 245(a)(1)." Both the verdict form and the jury instruction reflected an alleged violation of section 245, subdivision (a)(1), rather than subdivision (a)(2) (as alleged in the information).

In discussing the discrepancy, the trial court initially indicated it would order the case file, but does not appear to have done so. Following the reading of the instructions to the jury, the court again raised the discrepancy. The prosecution requested, and defense counsel did not object, that the court take judicial notice of the court file, including the probation report, in determining whether Soto was convicted under subdivision (a)(1) or (a)(2). The court noted that the inclusion of the firearm enhancement under section 12022.5 would be "reasonably persuasive" to support the inference that Soto was convicted under subdivision (a)(2), but stated it would review the materials if needed after the jury returned its findings.

Following the verdict, the court stated it "suspect[ed] it actually was an (a)(2) and simply was misidentified in the abstract of judgment," but that the issue was "largely an academic question because there are multiple strikes." Thus, the court stated it did not intend to "pursue this further" absent a request by defense counsel to do so. The court therefore made a "tentative" finding that the conviction under section 245, subsection (a)(1), was a strike, to be reconsidered if defendant provided additional relevant

13

information.  Defense counsel indicated he would address the issue at sentencing; however, by that time, defendant was representing himself in pro. per. and did not present any further information.

### 2. Legal Principles

In reviewing a challenge to the sufficiency of the evidence, "the relevant inquiry is whether, on review of the entire record in the light most favorable to the judgment, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt.  [Citations.]"  (*People v. Young* (2005) 34 Cal.4th 1149, 1180.)  "Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.  [Citation.]  Thus, if the verdict is supported by substantial evidence, we must accord due deference to the trier of fact. . . .  [Citations.]"  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

The jury's role in a trial on prior convictions is to determine whether a defendant "has suffered" the alleged prior conviction.  (*People v. Epps* (2001) 25 Cal.4th 19, 25 (*Epps*); see also *People v. Kelii* (1999) 21 Cal.4th 452, 458-459 [noting the jury has "little to do except to determine whether [the admitted] documents are authentic and, if so, are sufficient to establish that the convictions the defendant suffered are indeed the ones alleged"].)  The trial court determines whether a prior conviction qualifies as a strike and also the question of identity—whether the defendant is the person who suffered the prior conviction.  (*Epps*, *supra*, 25 Cal.4th at p. 25; section 1025, subd. (c).)

"A common means of proving the fact and nature of a prior conviction is to introduce certified documents from the record of the prior court proceeding and commitment to prison, including the abstract of judgment describing the prior offense.  [Citations.]"  (*People v. Delgado* (2008) 43 Cal.4th 1059, 1066.)  "'[The] trier of fact is entitled to draw reasonable inferences from certified records offered to prove a defendant suffered a prior conviction. . . .'  [Citation.]"  (*Ibid.*)  "[O]fficial government records,"

including a certified abstract of judgment, that clearly describe a prior conviction "presumptively establish that the conviction in fact occurred." (*Id*. at pp. 1066, 1070.)

### 3. Case Number GA013692

Soto points to the inconsistent allegations regarding whether case number GA013692 reflects a conviction for section 245, subdivision (a)(1), or subdivision (a)(2), and argues that there was insufficient evidence that he suffered a prior conviction under either subdivision. We agree.

While the information alleged that Soto's prior conviction was pursuant to section 245, subdivision (a)(2), the instructions to the jury and the verdict form both state that Soto's conviction was pursuant to section 245, subdivision (a)(1). Section 245, subdivision (a)(1) covers assault with a "deadly weapon or instrument other than a firearm," while subdivision (a)(2) covers assault with a firearm. As detailed above, the abstract of judgment for this case was internally inconsistent—it listed subdivision (a)(1), but described the charge as "asslt w/ firearm" and further alleged an enhancement for use of a firearm under section 12022.5. While the court appeared to conclude that the conviction was likely under subsection (a)(2), that conclusion is inconsistent with the jury's verdict that Soto suffered a prior conviction under subsection (a)(1). Moreover, the court then made a "tentative" finding that Soto suffered a prior strike under subsection (a)(1), which was, again, unsupported by the court's own statements regarding the evidence. As such, there was insufficient evidence to support the jury's finding that Soto was convicted of violating section 245, subsection (a)(1), in case number GA013692.

We therefore reverse the jury's verdict as to its true finding on the prior conviction on case number GA013692.[10] We similarly reverse the trial court's finding that this prior conviction was a serious felony (§§ 1170.12, subds. (a)-(d), 667, subds. (a)-(i)). We

---

[10]     We do not reach Soto's argument that the abstract of judgment does not establish his prior conviction because it reflects a different name. Moreover, as discussed below, we find that contention lacks merit.

further remand to the trial court for consideration of a retrial on this finding, or, in the absence of a true finding in a retrial, for resentencing without the use of case number GA013692 for the purposes of the prior serious felony conviction enhancements under section 667, subdivision (a)(1). We note that the trier of fact may look to the entire record of the conviction in determining the truth of prior conviction allegations. (*People v. Guerrero* (1988) 44 Cal.3d 343, 356; see also *People v. Reed* (1996) 13 Cal.4th 217, 230 [reporter's transcript of preliminary hearing is part of the record of prior conviction]; *People v. Trujillo* (2006) 40 Cal.4th 165, 179 [excluding defendant's statements made in probation report after guilty plea from the record of the prior conviction, as "such statements do not 'reflect[] the facts of the offense for which the defendant was convicted.' [Citation.]"].)

### 4. Case Number BA099601

Soto contends there was insufficient evidence to support the factual findings regarding the two prior convictions in case number BA099601 because the date of conviction alleged in the information (April 4, 1994) does not match the date of conviction in the abstract of judgment (December 28, 1994). However, the information was amended at the prosecution's request at the beginning of the trial on the prior convictions and thereafter reflected the same date, December 28, 1994, shown on the abstract of judgment. Soto did not object to the amendment. The verdict forms submitted to the jury on these prior convictions also contained the date of December 28, 1994. We conclude that the certified abstract of judgment was sufficient evidence to establish that Soto suffered prior convictions for robbery and carjacking on December 28, 1994.[11]

---

[11]  Soto also argues that the fingerprint card and the chronological history contain conflicting evidence regarding these convictions. We disagree. While the fingerprint card appears to include a handwritten description accompanying case number BA099601, citing a different Penal Code section (section 212.5, subdivision (a), instead of section 211), the remainder of the notation—including the case number, the count under section 215 and the description of the crimes as robbery and carjacking—all match the abstract of

### 5. *Case Number GA017493*

With respect to the prior convictions on two counts of carjacking in case number GA017493, Soto argues that the prison packet did not sufficiently establish that he suffered these convictions because the abstract of judgment and fingerprint card do not include his name. Both documents list the defendant as "Jose Soto," with the alias "Jose Escobar." We reject this contention.

Substantial evidence supported the conclusion that "Jose Soto," "Jose Escobar," and "Antonio Soto" were the same person who suffered the alleged prior convictions. The same CDC number (J46547) was reflected on the cover page of the prison packet, the chronological history, two of the three abstracts of judgment (including for case number GA017493), the fingerprint card, the photograph, and the Notice of Release found in Soto's mother's home. The prosecution presented evidence that the CDC number was unique to each prisoner. The name "Jose Escobar" was included in all three abstracts of judgment, including the abstract for case number BA099601, which also included the name "Antonio Soto." The date of birth on the Notice of Release matched Soto's date of birth listed on the abstract for the current case. The prosecutor further contended that the photograph in the prison packet was "generally consistent" with the appearance of Soto in court, as well as with the prior photos and video footage of Soto presented at trial. Having considered all of this evidence, the trial court found that "this all does appear to be Mr. Antonio Soto or the person who is before the Court." We find the trial court had sufficient evidence to reasonably reach this conclusion.

### 6. *Counts 7 and 8 Based on Soto's Prior Convictions*

In counts seven and eight, Soto was charged with possession of a firearm by a felon (§ 12021, subd. (a)(1).) The information listed four predicate prior convictions in

---

judgment. Moreover, even if this notation could support the inference Soto advances, that does not mean the remaining evidence introduced by the prosecution was insufficient to establish Soto's prior convictions. With respect to the chronological history, the entry showing that Soto was received in prison on January 11, 1995 does not contradict the finding that he was convicted of the alleged offenses on December 28, 1994.

17

support of each count (excluding one of the two carjacking counts in case number GA017493). Soto contends that there was insufficient evidence for the jury to have found that Soto suffered any of the prior convictions listed in counts seven and eight. As detailed above, we affirm the jury's findings as to three of the four prior convictions supporting these counts. Accordingly, there was substantial evidence to support the jury's determination that Soto suffered at least one prior conviction and therefore to establish that element of the crime.

### C. Jury Instruction Regarding Reasonable Doubt

Soto contends that the trial court "failed to inform the jury that it must find 'each element' of the offense or enhancement to be proven beyond a reasonable doubt." We find that Soto has forfeited this claim and, in any event, the trial court did not err in instructing the jury regarding the burden of proof.

The court instructed the jury with standard instruction, CALCRIM No. 220, which stated that the presumption of innocence "requires that the People prove a defendant guilty beyond a reasonable doubt. Whenever I tell you the People must prove something, I mean they must prove it beyond a reasonable doubt unless I specifically tell you otherwise." As an initial matter, Soto did not object to or request clarification of this instruction at trial. Therefore, we find that Soto forfeited his right to challenge this instruction. (See *People v. Catlin* (2001) 26 Cal.4th 81, 149 ["'"Generally, a party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language."' [Citations.]"].) Notably, Soto does not address the forfeiture issue in his reply.

Further, even if we were to reach the merits, we would find that the trial court properly instructed the jury with CALCRIM No. 220. The California Supreme Court and multiple Courts of Appeal have rejected challenges to the language of this instruction, including the precise language identified by Soto. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088-1089 [concluding "that the instructions, taken as a whole,

18

adequately informed the jury that the prosecution was required to prove each element of the charged crime beyond a reasonable doubt"]; see also *People v. Campos* (2007) 156 Cal.App.4th 1228, 1239, and cases cited therein.) Soto's suggestion that we should find that *Ramos* was wrongly decided is unpersuasive.

### D. *Imposition of Additional Fees*

The Attorney General claims that the trial court should have imposed court security fees and criminal conviction assessments for each conviction, and requests modification of the abstract of judgment to include the additional fees. We agree.

The trial court here imposed two $40 court security fees and two $30 criminal conviction assessments pursuant to Soto's convictions on counts two and six. The Attorney General argues that the court additionally should have imposed the same fees for the convictions on counts one, seven, and eight. Soto does not dispute this contention. We agree that the trial court failed to impose the proper security fees and assessments.

The court security fee (§ 1465.8, subd. (a)(1)) and criminal conviction assessment (Gov. Code, § 70373) "shall" be imposed on every count. (See *People v. Garcia* (2014) 224 Cal.App.4th 738, 744-745.) The omission of mandatory fees and assessments may be corrected for the first time on appeal. (*People v. Castellanos* (2009) 175 Cal.App.4th 1524, 1530.) Accordingly, the abstract of judgment is ordered modified to reflect three $40 court security fees and three $30 criminal conviction assessments on Soto's convictions on counts one, seven, and eight.

19

**DISPOSITION**

We reverse the verdict with respect to the finding of "true" on Soto's prior conviction under case number GA013692, as well as the trial court's corresponding finding that the prior conviction was a serious felony, and remand for further proceedings consistent with this opinion. We further order the abstract of judgment to be modified to reflect an additional $120 in court security fees and $90 in criminal conviction assessments. We affirm the judgment in all other respects.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:



EPSTEIN, P. J.



WILLHITE, J.


20